UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| STEVEN J. PETERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-120 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **OPINION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits (SSI). Plaintiff filed his application for benefits on January 29, 2007, alleging a February 11, 1985 onset of disability.[1] (A.R. 86-88). His claim for SSI benefits was denied on initial review. (A.R. 53-56). On February 26, 2009, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 31-51). On April 10, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 22-30). On December 23, 2010, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, February 2007 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 9). The three issues raised by plaintiff are as follows:

1. Whether the ALJ violated the treating physician rule;

2. Whether the ALJ "erred in rejecting [the] statement of a witness[;]" and

3. Whether the hypothetical question the ALJ posed to the VE "properly cited all the claimant's limitations."

(Issues Presented for Review, Plf. Brief at 1, docket # 14). Upon review, the Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters*

-2-

*v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity[2] on or after January 8, 2007.  (A.R. 24).  He found that plaintiff had the following severe impairments: attention deficit disorder and a major depressive disorder.  (A.R. 24).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 and 12.04.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

---

[2]Plaintiff testified that he was working approximately 20 hours per week in a bar washing dishes and earning $8.00 an hour.  (A.R. 36).  The ALJ found that this work did not rise to the level of substantial gainful activity that would preclude an award of benefits at the first step of the sequential analysis.  (A.R. 24).  "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act."  *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that []he has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."  *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

In activities of daily living, the claimant has mild restriction. Harriet Squires, M.D., stated in a medical opinion request form dated January 10, 2008, that the claimant had no restrictions in his ability to perform activities of daily living (Exhibit 11F)[A.R. 213-19]. The claimant stated in the function report that he grooms and bathes himself, cooks, goes skateboarding, goes shopping, goes for walks, uses public transportation, watches movies, plays video games, and gets together with friends. He also stated that he is able to drive, but that he lost his driver's license (Exhibit 4E)[A.R. 121-28]. In addition, the claimant testified that he had been working 20 hours a week for the last four months.

In social functioning, the claimant has mild difficulties. Dr. Stewart stated in a psychological assessment report dated December 6, 2006 that the claimant was cooperative during the assessment (Exhibit 6F)[A.R. 185-93]. Dr. Squire stated in treatment notes dated July 12, 2007, that the claimant was cooperative and that his eye contact was fair (Exhibit 12F, p. 22)[A.R. 241]. In addition, the record does not document that the claimant has experienced any significant ongoing difficulties getting along with others.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Stewart stated that the claimant's memory appeared to be defective, but that he was alert, oriented, and that his insight and judgment appeared to be fair. He also stated that the claimant appeared to be functioning in the average range, intellectually (Exhibit 6F, p. 7)[A.R.190]. Dr. Squire stated in treatment notes dated July 12, 2007, that the claimant's speech was normal, that his affect was full, his thought process was logical, and that his judgment was adequate (Exhibit 12F, p. 22)[A.R. 241]. The undersigned also notes that the claimant stated that he watches movies and plays video games and he did not indicate that he had any difficulty with concentration when performing these activities.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).

(A.R. 24-26).  The ALJ found that plaintiff's residual functional capacity (RFC) for a full range of work at all exertional levels was reduced by the following nonexertional limitations: performing simple, routine, repetitive, unskilled tasks involving minimal industrial standards for persistence and pace in a competitive employment setting and with instructions that could be demonstrated.  (A.R. 26).  The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible.  (A.R. 26-29).  Plaintiff had no past relevant work.  (A.R. 29).  He was 21-years-old on the date he filed his application for SSI benefits and 24-years-old as of the date of the ALJ's decision.  Thus, at all times relevant to his claim for SSI benefits, plaintiff was classified as a younger individual.  (A.R. 29).  Plaintiff has a limited education and is able to communicate in English.  (A.R. 29).  The transferability of job skills was not material to a disability determination because plaintiff did not have past relevant work.  (A.R. 29).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 25,300 jobs in the State of Michigan that the hypothetical person would be capable of performing.  (A.R. 46-49).  The ALJ found that this constituted a significant number of jobs and ALJ held that plaintiff was not disabled.[3]  (A.R. 29-30).

_____

[3]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004).  The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability.  *See Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007);*Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether plaintiff's documented history of alcohol abuse was material to a finding of disability.

**1.**

Plaintiff argues that the ALJ committed reversible error when he failed to give appropriate weight to the opinions of a treating physician:  Harriet Squier,[4] M.D.  (Plf. Brief at 6-7). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported

---

[4]The last name of plaintiff's family physician appears under a variety of spellings.  Three different versions are found in plaintiff's brief: Squier, Squires, and Squire.  (Plf. Brief at 4-7). Three alternatives appear in the ALJ's opinion: Squires, Squire, and Squiere.  (A.R. 25-28). Divergent spellings are even found within documents:  "Squire" appears in the RFC questionnaire heading (A.R. 213), but the doctor's signature appears as "Squier."  (A.R. 219).  Because it is unlikely that the physician misspelled her own name, "Squier" is utilized herein unless the name appears within a quotation.

by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

The ALJ considered all the evidence provided by Dr. Squier, including her treatment notes and questionnaire responses:

> Dr. Squire stated in treatment notes dated July 12, 2007, that the claimant was looking for jobs but that he wasn't having any luck getting one. She also stated that he was scheduled to compete in a skateboarding competition. In addition, she stated that his speech was normal, his affect was full, his thought process was logical, his thought content was positive, and that his judgment was adequate. She further stated that he was doing well on essentially no medications (Exhibit 12F, p. 22)[A.R. 241].

* * *

> Dr. Squiere stated in treatment notes dated January 10, 2008, that the claimant's thought process was logical, but that his thought content was negative. She stated that his judgment was limited and that his insight was poor. In addition, she stated that the claimant had had five jobs and that he quit each job within a month of being hired, but that he could not give an explanation why he quit. She further stated that he was not currently looking for employment (Exhibit 12F, p. 17)[A.R. 236]. These treatment notes suggest that the claimant is capable of working, but that he chooses not to follow through with the jobs that he gets.

* * *

> In therapy notes dated October 15, 2008, it stated that the claimant had gotten a job. It also stated that the claimant had been drinking several days that week and refused to consider abstinence (Exhibit 12F, p. 24)[A.R. 243].

> The Administrative Law Judge considered the opinions of Dr. Squires who stated in a medical opinion request form dated January 10, 2008, that the claimant would experience marked restrictions in his ability to maintain attention and concentration for extended periods of time, marked restrictions in his ability to sustain an ordinary work routine without special supervision, and marked restrictions in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms (Exhibit 11F)[A.R. 213-

-9-

19]. These opinions are not given significant weight because they are inconsistent with the objective evidence of record, which indicates that the claimant experiences only moderate symptoms secondary to his psychological impairments. In addition, the questionnaire responses were offered after the claimant asked Dr. Squires to complete the questionnaire and the responses appear to be based heavily on the claimant's own reports of his abilities. Furthermore, these opinions are inconsistent with the claimant's report that he had been working 20 hours a week for over 4 months.

(A.R. 27-28). Dr. Squier's opinions on the issues of disability, RFC, and credibility reserved to the

Commissioner were not entitled to any particular weight. 20 C.F.R. § 416.927(d); *see Allen v.*

*Commissioner*, 561 F.3d at 652. Her opinions on plaintiff's functional limitations were not well

supported by objective evidence and were inconsistent with plaintiff's activities. (A.R. 28). The

ALJ complied with the procedural requirement of providing "good reasons" for the limited weight

he gave to Dr. Squier's opinions. Her opinions were based on her assigning full credibility to her

patient's subjective complaints rather than objective test results. The ALJ is responsible for making

the factual finding regarding the claimant's credibility, not the treating physician. *See Allen v.*

*Commissioner*, 561 F.3d at 652; *see also Ferguson v. Commissioner*, 628 F.3d 269, 274 (6th Cir.

2010). The court finds no violation of the treating physician rule.


**2.**

Plaintiff argues that the ALJ "erred in rejecting the statement of the witness." (Plf.

Brief 7). He does not directly identify "the witness" or the "statement," but both can be deduced

from the conclusion section of his brief. (*Id.* at 8). The witness is plaintiff's mother and the

statement is a "function report" that she submitted in support of plaintiff's claim for SSI benefits.

Plaintiff's entire argument consists of quoting 20 C.F.R. §§ 416.929(a) and 416.945(a)(3) and

highlighting portions of the text. (Plf. Brief at 7-8). Highlighting fragments of two regulations and

-10-

stating a conclusion is not a substitute for a coherent argument supported by citations to specific portions of the administrative record and supporting legal authority. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

Even assuming the issue had not been waived, it is patently meritless. It is the ALJ's function to determine the credibility of the witnesses. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Credibility determinations are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "An ALJ is in the best position to observe witnesses' demeanor and to make an appropriate evaluation of their credibility. Therefore an ALJ's credibility assessment will not be disturbed absent compelling reason." *Reynolds v. Commissioner*, 424 F. App'x 411, 417 (6th Cir. 2011); *see Norris v. Commissioner*, 461 F. App'x 433, 438 (6th Cir. 2012) ("Because a reasonable mind might accept the evidence as adequate to support an adverse-credibility determination, we conclude that substantial evidence supports the ALJ's finding."). The court does not make its own credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d at 528.

Plaintiff lives with his mother, Ms. Leslie Peterman. (A.R. 35). She generally provides his transportation.[5] (A.R. 36). She was the moving force behind his application for SSI

---

[5]Plaintiff lost his driver's license after he was convicted of driving under the influence of alcohol. (A.R. 35-36). He has a history of alcohol-related legal problems. At age 17, he was convicted of breaking and entering. In addition to his sentence of 2½ years of probation, he was required to attend alcohol abuse counseling. At age 19 or 20, he received a citation for being in illegal possession of alcohol. In November 2006, he was convicted of driving under the influence of alcohol, spent six days in jail, and lost his driver's license. (A.R. 224, 245). On May 1, 2008, plaintiff's therapist noted that he drank "2-4 22 oz. beers" on a daily basis and a "fifth" once a

benefits.  (A.R. 232, 236).  Ms. Peterman provided a statement in which she indicated that plaintiff spends his time playing video games with friends and skateboarding, yet asserted that he has been disabled "since birth."  (A.R. 129-36).  Ms. Peterman is not an "acceptable medical source."  20 C.F.R. § 416.913(a).  Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule.  *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)).  Parents and other relatives are classified as "other sources" 20 C.F.R. § 416.913(d).  The social security regulations require that information from other sources be "considered."  2006 WL 2329939, at * 1, 4; *see* 20 C.F.R. §§ 416.927(b), .929(a), .945(a)(3); *see also* 20 C.F.R. § 416.913(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.").  This is not a demanding standard, and it was easily met here.  The ALJ considered Ms. Peterman's statement and her testimony, but he did not find them persuasive:

> The Administrative Law Judge considered the opinions of the claimant's mother [] that were offered in a third-party function report and her testimony at the hearing.  These opinions, while considered sincere, are not given significant weight because she is not qualified in evaluating disability.  In addition, her opinions are likely biased in favor of the claimant receiving disability benefits, secondary to her relationship with the claimant and the

---

month.  (A.R. 245).  On July 16, 2008, he reported that he was drinking six beers per day, three days a week, and that he would drink a 12-pack if he had the money for it.  (A.R. 245).  October 7, 2008 progress notes indicate that plaintiff was "still drinking 'a lot' on some days."  (A.R. 242).  On October 15, 2008, his therapist noted that plaintiff "refus[ed] to consider abstinence" from alcohol.  (A.R. 243).

possibility of receiving secondary financial gain if the claimant were to receive disability benefits.

(A.R. 28). It was appropriate for the ALJ to consider plaintiff's mother's financial motives in determining what weight, if any, to give to her statement and testimony. *See Brown v. Commissioner*, 1 F. App'x 445, 452 (6th Cir. 2001); *see also Foster v. Astrue*, 277 F. App'x 462, 466 (5th Cir. 2008); *Hutchins v. Astrue*, No. 11-122, 2012 WL 995274 (W.D. Pa. Mar. 23, 2012) (collecting cases); *Stockman v. Barnhart*, No. 02-2162, 2003 WL 22078385, at * 3 (E.D. Pa. August 26, 2003) (Upholding the ALJ's finding that the claimant's mother was not credible "because of possible secondary gain, she presented her son in a light that is not in accordance with true circumstances.").

### 3.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the hypothetical question he posed to the VE was inadequate:

> The ALJ found that Mr. Peterman has moderate difficulties in concentration, persistence and pace. Tr. 25. This was not translated into the hypothetical, which only asked for jobs with "minimal industrial standards for persistence in pace [sic].["] Tr. 47. This does not address the moderate deficiency in concentration found by the ALJ. If the hypothetical does not contain all a claimant's limitations, it is not substantial evidence. *White v. Comm'r of Soc. Sec.*[,] 312 Fed. Appx 779, 2009 U.S. App. LEXIS 4181 (6th Cir.)[.]

(Plf. Brief at 8). Plaintiff's argument is meritless. It conflates the ALJ's findings at distinct stages of the sequential analysis, ignores the ALJ's credibility determination, and disregards the more carefully calibrated nature of the ALJ's factual finding regarding plaintiff's RFC.

The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis. See 20 C.F.R. § 416.920(a)(4)(iii). Step 3 regulates a

-13-

"narrow category of adjudicatory conduct."  *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir.

2006) (*en banc*).  It "governs the organization and evaluation of proof of listed impairments that, if

supported, renders entitlement to benefits a foregone conclusion."  *Id.*  "Claimants are conclusively

presumed to be disabled if they suffer from an infirmity that appears on the [Social Security

Administration's] SSA's special list of impairments, or that is at least equal in severity to those

listed.  The list identifies and defines impairments that are of sufficient severity as to prevent any

gainful activity. A person with such an impairment or an equivalent, consequently, necessarily

satisfies that statutory definition of disability."  *Id.* at 643 (internal citations omitted).  It is well

established that a claimant has the burden of demonstrating that he satisfies all the individual

requirements of a listing.  *See Elam*, 348 F.3d at 125.  "If all the requirements of the listing are not

present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th

Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed

impairment."  *Elam*, 348 F.3d at 125.  By contrast, the administrative finding of a claimant's RFC

is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5.  *See* 20

C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual

functional capacity.  We use this residual functional capacity assessment at both step four and step

five when we evaluate your claim at these steps.").

       Plaintiff is not challenging the ALJ's step-3 finding that he did not meet or equal the

requirements of any listed impairment.  Rather, he is attempting to take a portion of the ALJ's

finding with regard to the paragraph B criteria at step 3 out of context and substitute it for the ALJ's

factual finding that he retained the RFC for a full range of work at all exertional levels, reduced by

nonexertional limitations which limited him to performing simple, routine, repetitive, unskilled tasks

-14-

involving minimal industrial standards for persistence and pace in a competitive employment setting and with instructions that could be demonstrated. (A.R. 26). It is well established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listing of Impairments." *Id.* at 4; *see Tippett v. Commissioner*, No. 3:10-cv-1427, 2011 WL 6014015, at * 12 (D. Or. Dec. 2, 2011); *Reynolds v. Commissioner*, No. 10-11044, 2011 WL 3897793, at * 3 (E.D. Mich. Aug.19, 2011); *Johnson v. Astrue*, No. 3:09-cv-492, 2010 WL 3894098, at * 8 (M.D. Fla. Sept. 30, 2010); *Olatubosun v. Astrue*, No. 8:09cv376, 2010 WL 3724819, at * 13 (D. Neb. Sept. 17, 2010). The ALJ's step-3 findings do not undermine his factual finding regarding plaintiff's RFC.

Further, the ALJ found that plaintiff's testimony claiming a greater level of limitation was not credible. (A.R. 26-29). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235).

The ALJ's hypothetical was adequate, and the VE's response provides substantial evidence supporting the administrative decision.

## **Conclusion**

For the reasons set forth herein,  the Commissioner's decision will affirmed.


Dated:   September 21, 2012          /s/  Joseph G. Scoville_____
                                                           United States Magistrate Judge